IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                          Case No. 2:21-cr-20011-MSN-cgc

KEVIN OLANDO OMBISI, and
ERIC BERNARD RUSSELL, JR.,
a/k/a "Yo yo," a/k/a, "Big Bro,"

    Defendants.

---

### ORDER ADOPTING REPORT AND RECOMMENDATION

---

Before the Court is Magistrate Judge Charmaine G. Claxton's Report and Recommendation ("Report"), entered April 22, 2022. (ECF No. 131.) The Report recommends that Defendant Eric B. Russell, Jr.'s ("Russell") Motion to Suppress Evidence Obtained Pursuant to Search Warrants for E911 Pings / Geolocation Data, (ECF No. 87) ("Motion"), be denied. Russell filed two legal objections to the Report on April 5, 2022. (ECF No. 135.) For the reasons set forth below, the Report is **ADOPTED**, and the Motion is **DENIED**.

### STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). Should a party file timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the

recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") District courts must endeavor to treat a party's properly rendered objections with scrupulous care. *See Smith v. Durham D&M LLC*, No. 19-6259, 2020 U.S. App. LEXIS 19471, at *3 (6th Cir. 2020).

However, the Court need not review — under a *de novo* or any other standard — those aspects of a report and recommendation to which no objection has been made. *Arn*, 474 U.S. at 150–52. "While most actions by a Magistrate Judge are reviewed for clear error, proposed recommendations on motions to suppress evidence in criminal matters are subject to *de novo* review." *United States v. Matlock*, No. 2:14-cv-020075-JTF-dkv, 2015 U.S. Dist. LEXIS 12444, at *3–4 (W.D. Tenn. 2015); *see United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007).

**FINDINGS OF FACT**

Magistrate Judge Claxton discusses the affidavit and facts in this matter in her Report's "Background" section, which explains the series of events underlying Russell's Motion. (*See* ECF No. 131 at PageID 1898–1911.) Although Russell has raised two *legal* objections to the Report, he does not challenge the Magistrate Judge's discussion as to these facts. Therefore, the Court **ADOPTS** and incorporates by reference those facts.[1]

**DISCUSSION**

A. Applicable Law

Traditionally, reviewing courts afford "great deference to a magistrate's determination of probable cause" and assess *only* whether a "substantial basis" existed for that finding. *United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013). The U.S. Supreme Court cautions that reviewing courts must not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 915 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "On the merits, probable cause exists under the Fourth Amendment 'when there is a fair probability, given the totality of the circumstances, that . . . evidence of a crime will be found in a particular place.'" *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (quoting *Brown*, 732 F.3d at 572). Critically, "a determination of probable cause[] must be *bound by the four corners* of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) (emphasis added). "There must be 'a nexus between the place to be searched and the evidence to be sought.'" *United States v. Frazier*,

---

[1] The factual background in this matter is extensive and has been neatly explained by the Magistrate Judge in her Report. (*See* ECF No. 131 at PageID 1898–1911.) As Russell does not object to the facts as presented, and the Court has adopted them, there is no need to repeat what has already been stated and the Magistrate Judge's findings of fact are incorporated by reference.

423 F.3d 526, 532 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).  "The critical element in a reasonable search is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Yet, a "bare bones" affidavit does not provide a substantial basis for probable cause.  *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017)  (quoting *Laughton*, 409 F.3d at 749–50) ("A bare-bones affidavit, in turn, is commonly defined as one that states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'"); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)).  "[A]n affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient *nexus between the illegal activity and the place to be searched*.'"  *White*, 874 F.3d at 496–97 (quoting *Carpenter*, 360 F.3d at 596) (emphasis added).

"Even if an affidavit describing a suspect's drug activity does not establish a *probable-cause nexus* between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a *'minimally sufficient' nexus* between the two."  *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) (quoting *Carpenter*, 360 F.3d at 596) (emphasis added).  The Sixth Circuit has "described a minimally sufficient nexus as one in which there is 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched.'" *Id.* at 451 (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)); *Leon*, 468 U.S. at 905 (exclusionary rule does "not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.")

"The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered.'" *Frazier*, 423 F.3d at 533 (quoting *Id.* at 922–23 n.23.) "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotations omitted). Nevertheless, the good faith exception to the exclusionary rule has four important limits: (1) where the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," *Id.* at 914; (2) if "the issuing magistrate wholly abandoned his judicial role," *id*; (3) if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 915; and (4) if the "warrant [is] so facially deficient — *i.e.*, failing to particularize the place to be searched or the things to be seized . . . ," *id.* at 923; *see Weaver*, 99 F.3d at 1380; *Van Shutters*, 163 F.3d at 337.

B.  **Russell's Objections**

Russell raises two objections to the Report: first, "that there is not a sufficient nexus between his cell phone location data and the investigation into 'Ombisi's drug activity'" and, second, "that Ping Warrants 3–7 rely almost exclusively on stale information." (ECF No. 131 at PageID 1912.)[2]

---

[2] Russell also requests an evidentiary hearing to "aid the Court's review of the issues, especially given the Magistrate Judge's extensive discussion and reliance on recent Sixth Circuit cases. (ECF No. 135 at PageID 1957.) The Court has determined, as the subsequent pages of this Order will show, that it can sufficiently consider the case law discussed in the Report and Objection based on the pleadings, thus obviating any need for a hearing. *See Gray v. Jabe*, No. 92-2316,

***Russell's first objection*** maintains that the reviewing Magistrate Judge applied the wrong standard of review under *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021). In *Sheckles*, the Sixth Circuit "articulated two standards that might apply to evaluate whether [a] search warrant established probable cause." *United States v. Ennis*, No. 21-1093, 2022 WL 976930, at *7–8 (6th Cir. 2022). (ECF No. 135 at PageID 1958–59.) "<u>First</u>, the traditional 'nexus' standard, which asks if a search warrant affidavit shows 'a fair probability that the phone's data will aid in a particular investigation and disclose evidence of criminal activity?'" *Id.* (quoting *Sheckles*, 996 F.3d at 338.) <u>Second</u>, the Sixth Circuit "questioned whether a higher standard, one that would require the affidavit to connect the phone itself to the criminal activity, was necessary." *Id.* (citing *Sheckles*, 996 F.3d at 338–39.) However, as the Report recognizes, the *Sheckles* court declined to resolve which standard applies to a warrant for real-time cellular site location information ("CSLI") because the warrant at issue satisfied both standards. (ECF No. 131 at PageID 1913.)

Here, Russell argues that the second *Sheckles* standard applies, and the Affidavit would have needed to tie him or his cell phone to his co-defendant's criminal activity for the warrant to be valid. (ECF No. 135 at PageID 1959.) He asserts that the underlying Affidavit can only show that he and his co-defendant "were in the same vicinity on a few different occasions," which alone

---

1993 WL 150732, at *6 (6th Cir. 1993) (citing *Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir. 1992)) ("The determination as to whether an evidentiary hearing is needed lies within the sound discretion of the district court."); *United States v. Atlas Lederer Co.*, 494 F. Supp. 2d 629, 634 (S.D. Ohio 2005) ("Whether to grant such an evidentiary hearing is committed to the discretion of the District Court.") Russell has also not provided any further basis for why an evidentiary hearing is necessary or why the objections cannot be decided on the pleadings; indeed, other courts have recognized that "it rests with the proponent of an evidentiary hearing to persuade the court that one is desirable and to offer reasons warranting it." *United States v. Cannons Eng'g. Corp.*, 899 F.2d 79, 94 (1st Cir. 1990); *see, e.g.*, *United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir. 1987) (evidentiary "hearings cannot be convened at the whim of a suitor, made available like popsicles in July, just because a passerby would like to have one."). Therefore, because the Court can comfortably adjudicate the legal objections on the pleadings, Russell's request for an evidentiary hearing is **DENIED**.

6

"does not support an inference that [he] or his cell phone were involved in any criminal activity." (*Id.*)  To substantiate his argument, Russell cites *United States v. Powell*, 943 F. Supp. 2d 759, (E.D. Mich. 2013) and *United States v. Griggs*, 2021 WL 3087985, at *3 (E.D. Mich. 2021)—cases in which the court did not find a proper nexus between the cellular device and criminal activity at issue and rendered the real-time CSLI warrants invalid.

      Like the case at bar, *Powell* involved a drug trafficking conspiracy—albeit for cocaine and heroin, rather than methamphetamines.  943 F. Supp. 2d at 764.  Although Russell maintains that his location in the same "vicinity on a few different occasions" as his co-defendant does not by itself "support an inference that [he]or his cell phone were involved in criminal activity," (ECF No. 135 at PageID 1959), even the *Powell* court concedes that "a person's location is in some way always relevant to his potential participation in a crime."  943 F. Supp. 2d at 778.  Although the *Powell* court concludes that "the government should have to demonstrate a nexus between a suspect and the phone, the phone and the criminal activity, as well as the criminal activity and suspect's location in protected areas, rather than merely probable cause that the person is engaged in criminal activity," it recognizes "that other courts usually do not require the showing discussed here and *no authoritative court has stated plainly that such a showing is required*."  *Id.* at 779 (emphasis added).  Put differently, the heightened standard announced in *Powell* that Russell asks this Court to apply was neither binding at its inception nor today.[3]  *See Sheckles*, 996 F.3d 330 (acknowledging the *Powell* standard without making it binding); *Ennis*, 2022 WL 976930, at *7–8 (by leaving the question open, *Sheckles* declined to alter the probable cause standard: Thus, the

---

[3] The Sixth Circuit has recognized at least one good reason for this: "The law cannot be that a criminal is entitled to rely on the expected untrackability of his tools. . . . The recent nature of cell phone location technology does not change this. If it did, then technology would help criminals but not the police."  *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir. 2012).

traditional 'nexus' standard remains good law.) Therefore, to be *consistent*—as opposed to simply "not inconsistent"—with Sixth Circuit precedent, the Court will apply the traditional nexus standard and not the heightened standard announced in *Powell*. 943 F. Supp. at 780; *Ennis*, 2022 WL 976930, at *7–8.[4]

Indeed, other courts do not apply the heightened *Powell* standard and instead focus on whether the underlying affidavit establishes "a 'fair probability' that the [real-time CSLI] records would reveal evidence of a crime." *United States v. Griffin*, No. 2:17-cr-20639-TGB-mkm, 2022 WL 2072042, at *22 (E.D. Mich 2022) (quoting *Sheckles*, 996 F.3d at 338).[5] The Sixth Circuit has clarified in recent months that the "fair probability" required for probable cause under *Illinois v. Gates*, 462 U.S. 213, 238 (1983) does not "require an 'exacting degree of specificity.'" *United States v. Elmore*, 18 F.4th 193, 203 (6th Cir. 2021) (quoting *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc)). Thus, probable cause is not a "high bar," *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)), and affidavits must be evaluated for sufficiency based on a "totality of the circumstances." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Review of the sufficiency of evidence

---

[4] In *Griggs*, the same court that decided *Powell* reapplied its heightened standard; Russell has not argued that any other court has adopted this approach and the Sixth Circuit has yet to adopt it despite opportunities to do so in *Sheckles* and *Ennis* (if it ever does). Indeed, the *Griggs* court acknowledged *Sheckles*—noting that "the Sixth Circuit has yet to resolve the nexus issue for warrants seeking long-term, real-time tracking of an individual's cell phone"—and decided to "follow its previous decision in *Powell* [to] require a nexus between the cellphone and criminal activity." *Griggs*, 2021 WL 3087985, at *9.

[5] For a more thorough explanation, *see United States v. Davis*, No. 18-37-DLB-cjs-2, 2019 WL 4927094, at *18 (E.D. Ky. 2019) (quoting *United States v. Powell*, 847 F.3d 760, 769 (6th Cir. 2017)) ("The Sixth Circuit [in *Powell*] did not engage in the district court's 'newly articulated probable-cause standard,' instead affirming the district court's findings on the basis that the *Leon* good-faith exception applied. Thus, this 'newly articulated' standard, while persuasive, is not binding on this Court.").

supporting the probable cause determination is limited to the information contained in the four corners of the affidavit." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010).

Here, the Affidavit establishes a fair probability that the sought information would uncover criminal activity. First, records obtained from a search of CC-1's iCloud Account[6] revealed a screenshot photograph (IMG_8055.PNG) of a conversation between Russell and his co-defendant where the two men discussed having "enough boxes on hand for 100+ orders," "a new login for usps," and instructions to "hit up post offices at night."[7] (ECF No. 88-1 at PageID 632–33.) Second, the fact that this text message communication occurred "by cell phone . . . sufficiently demonstrates a nexus between the cell phone number at issue and the criminal activity." *Davis*, 2019 WL 4927094, at *19 (finding that communication about drug activity via cell phone, at the phone number at issue, would satisfy even the heightened standard in *Powell*). Third, the Affidavit submits that real-time CSLI could show whether Russell spent time in the same area as Ombisi, and if so which areas, and whether he visits the post offices monitored in the investigation. (ECF No. 88-1 at PageID 633–34.) Fourth, while Russell is correct that Agent Paul Cox's law enforcement training and experience "cannot substitute for the lack of evidentiary nexus," *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994), here the Agent's interpretation—one factor in the totality of circumstances—of Russell and Ombisi's text conversation as one "strategizing about how to create fake businesses and utilize USPS in order to distribute illegal substances" supports a finding of an evidentiary nexus in this matter. *See Davis*, 2019 WL 4927094, at *19. Russell's objection focuses only on the third factor listed above, but the totality of the

---

[6] According to the Affidavit, this iCloud Account belonged to Kevin Olando Ombisi, who is Russell's co-defendant. (ECF No. 88-1 at PageID 631–33.)

[7] The photograph depicts a conversation between Mr. Ombisi and a contact named "Yoyo", the contact and phone number associated in Mr. Ombisi's phone with Russell. AT&T business records corroborate this finding. (ECF No. 88-1 at PageID 633.)

circumstances renders a probable cause finding appropriate here. *See United States v. Rodgers*, 536 F. App'x 621, 624 (6th Cir. 2013) ("Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband will be found in a particular place.") Therefore, Russell's first objection is hereby **OVERRULED**.

***Russell's second objection*** alleges that the Affidavit relied on stale information but does not add anything new to what has been argued before the reviewing Magistrate Judge or address the Magistrate Judge's legal analysis of that argument. This approach does not properly state an objection to the Report.[8] Nevertheless, even if Russell's objection can be fairly characterized as one, it still comes up short under the applicable law. Courts in this Circuit must "consider four factors when analyzing whether an affidavit is stale: (1) whether the crime is transitory or continuing; (2) whether the criminal is nomadic or stationary; (3) whether the thing to be seized is perishable or durable; and (4) whether the place to be searched is a forum of convenience or a secure operational base." *United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015) (citing *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006)). Put simply, "a warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *Abboud*, 438 F.3d at 572. But "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness," *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001), and "where the criminal activity occurred in a 'secure operational base,' the passage of time becomes less significant." *Id.*

---

[8] "Courts in the Sixth Circuit have routinely held that objections that merely restate the arguments previously presented are improper." *D.S. v. Knox Cnty.*, No. 3:20-cv-240, 2022 WL 885851, at *31 (E.D. Tenn. 2022); *see United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, *1 (E.D. Ky. 2017) ("Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") (citations omitted).

Here, after reviewing the record, the Court agrees with the Magistrate Judge's conclusion that the affidavit was not based on stale information and can therefore support a probable cause finding. First, the nature of the crime is an "ongoing narcotics distribution conspiracy" that renders the passage of time "less significant." (ECF No. 131 at PageID 1914.) *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). Beginning in November 2019, Food and Drug Administration-Office of Criminal Investigations ("FDA-OCI") and Drug Enforcement Agency ("DEA") agents conducted undercover purchases and intercepted seven packages containing illegal amphetamine-based prescription drugs that were later traced to Defendants. (ECF No. 1-1 at PageID 4; ECF No. 88-1 at PageID 629.) This factor is all but dispositive on the staleness issue and weighs strongly in favor of the United States. *United States v. Rodriguez*, 716 F. App'x 387, 390 (6th Cir. 2017) (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)) ("Even where an affidavit includes outdated information, '[t]he inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the drug den end of the continuum.'").

Second, that "all of these drugs were purchased without prescriptions and were delivered via USPS, entering the mail stream in the San Antonio, TX-area," certainly suggests the criminals were more stationary than nomadic. (ECF No. 88-1 at PageID 629.) This "pattern of recent drug-trafficking activity" points to a single location being "used as a distribution point" and also weighs in favor of the United States. *Rodriguez*, 716 F. App'x at 390. The third factor weighs in favor of staleness, however; information about drug crimes "goes stale very quickly because drugs are usually sold and consumed in a prompt fashion," *United States v. Redmond*, 475 F. App'x 603, 608–09 (6th Cir. 2012), and methamphetamine is a "perishable and easily transferable" substance. *Abboud*, 438 F.3d at 572. Finally, while the second factor weighs in favor of there being a secure

11

operational base for drug distribution, the record does not clearly establish one. Accordingly, the fourth *Abboud* factor weighs in favor of staleness. On balance, however, the first two factors carry the day because (a) Russell has not distinguished applicable Sixth Circuit case law relied upon in the Report that recognizes affidavits did not rely on stale information when they relied on information several months old, *see, e.g.*, *Powell*, 603 F. App'x at 478 and (b) the *Abboud* factors weigh against invalidating the warrant based on staleness given the nature of the criminal activity. *See Greene*, 250 F.3d at 481 ("Evidence of ongoing criminal activity will generally defeat a claim of staleness.") Therefore, Russell's second objection is hereby **OVERRULED**.

## CONCLUSION

For the foregoing reasons, the Report is **ADOPTED**, the objections are **OVERRULED**, and the Motion to Suppress, (ECF No. 87), is **DENIED**.

**IT IS SO ORDERED** this 26th day of August, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE