IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 2:21-cr-20011-MSN-cgc

KEVIN OLANDO OMBISI, and
ERIC BERNARD RUSSELL, JR.,
a/k/a "Yo yo," a/k/a, "Big Bro,"

    Defendants.

---

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION**

---

Before the Court is Magistrate Judge Charmaine G. Claxton's Report and Recommendation ("Report"), entered April 22, 2022. (ECF No. 134.) The Report bifurcates Defendant Eric B. Russell's ("Russell") Motion to Suppress ("Motion), (ECF No. 89), and recommends that it (1) be denied as to evidence obtained pursuant to search warrant 20-SW-152 and ("first search") (2) granted as to evidence obtained pursuant to search warrant 20-SW-273 ("second search"). (ECF No. 134 at PageID 1942.) The Government objected to the Report on May 5, 2022, (ECF No. 138), and Ombisi objected to the Report on May 6, 2022. (ECF No. 139.) For the reasons below, the Report is **ADOPTED IN PART** and the Motion is **DENIED**.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings

of fact." Fed. R. Crim. P. 59(b)(1). Should a party file timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") District courts must endeavor to treat a party's properly rendered objections with scrupulous care. *See Smith v. Durham D&M LLC*, No. 19-6259, 2020 U.S. App. LEXIS 19471, at *3 (6th Cir. 2020). However, the Court need not review — under a *de novo* or any other standard —those aspects of a report and recommendation to which no objection has been made. *Arn*, 474 U.S. at 150–52. "While most actions by a Magistrate Judge are reviewed for clear error, proposed recommendations on motions to suppress evidence in criminal matters are subject to *de novo*

2

review." *United States v. Matlock*, No. 2:14-cv-020075-JTF-dkv, 2015 U.S. Dist. LEXIS 12444, at *3–4 (W.D. Tenn. 2015); *see United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007).

## FINDINGS OF FACT

In her Report, Magistrate Judge Claxton discusses the factual background for Russell's instant Motion to Suppress. (*See* ECF No. 134 at PageID 1943–51.) Although the parties have raised legal objections to the Report, they have not challenged the Magistrate Judge's background discussion. Therefore, the Court **ADOPTS** and incorporates by reference these facts.[1]

## DISCUSSION

### A. Applicable Law

Traditionally, reviewing courts afford "great deference to a magistrate's determination of probable cause" and assess *only* whether a "substantial basis" existed for that finding. *United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013). The U.S. Supreme Court cautions that reviewing courts must not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 915 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "On the merits, probable cause exists under the Fourth Amendment 'when there is a fair probability, given the totality of the circumstances, that . . . evidence of a crime will be found in a particular place.'" *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (quoting *Brown*, 732 F.3d at 572). Critically, "a determination of probable cause[] must be *bound by the four corners* of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) (emphasis added). "There must be

---

[1] The factual background in this matter is extensive and has been neatly explained by the Magistrate Judge in her Report. (*See* ECF No. 134 at PageID 1943–51.) As there have been no objections to the facts, and the Court has adopted them as written, there is no need to repeat what has already been stated and the Magistrate Judge's findings of fact are incorporated by reference.

'a nexus between the place to be searched and the evidence to be sought.'" *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The critical element in a reasonable search is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Yet, a "bare bones" affidavit does not provide a substantial basis for probable cause. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 749–50) ("A bare-bones affidavit, in turn, is commonly defined as one that states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'"); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)). "[A]n affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient *nexus between the illegal activity and the place to be searched*.'" *White*, 874 F.3d at 496–97 (quoting *Carpenter*, 360 F.3d at 596) (emphasis added).

"Even if an affidavit describing a suspect's drug activity does not establish a *probable-cause nexus* between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a *'minimally sufficient' nexus* between the two." *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) (quoting *Carpenter*, 360 F.3d at 596) (emphasis added). The Sixth Circuit has "described a minimally sufficient nexus as one in which there is 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched.'" *Id.* at 451 (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)); *Leon*, 468 U.S. at

4

905 (exclusionary rule does "not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.")

"The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered.'" *Frazier*, 423 F.3d at 533 (quoting *Id.* at 922–23 n.23.) "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotations omitted). Nevertheless, the good faith exception to the exclusionary rule has four important limits: (1) where the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," *Id.* at 914; (2) if "the issuing magistrate wholly abandoned his judicial role," *id*; (3) if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 915; and (4) if the "warrant [is] so facially deficient — *i.e.*, failing to particularize the place to be searched or the things to be seized . . . ," *id.* at 923; *see Weaver*, 99 F.3d at 1380; *Van Shutters*, 163 F.3d at 337.

## B. Search Warrant 20-SW-152 and Ombisi's Objection

The issuing magistrate received an application and affidavit ("Affidavit 1") from Special Agent Paul Cox on May 27, 2020 to search what Affidavit 1 refers to as a "Target iCloud Account" that belonged to Russell ("Russell' iCloud Account").[2] (ECF No. 90 at PageID 825–43.) The

---

[2] Affidavit 1 explains—and Russell does not dispute—that the iCloud account at issue is associated with Russell's personal telephone number, which is why the Court will, for clarity, refer to the account as "Russell's iCloud Account". (*See* ECF No. 90 at PageID 825.)

issuing magistrate subsequently issued search warrant 20-SW-152 ("First Search Warrant"); the reviewing magistrate determined that the issuing magistrate had probable cause to do so and recommended that this Court deny the Motion. Russell objects to this recommendation because "[t]here is absolutely no information in the affidavit suggesting Mr. Russell had any knowledge or reason to know what Ombisi was shipping, let alone that he was shipping illegal drugs."[3] (ECF No. 136 at PageID 1962–64.) He further requests an evidentiary hearing to "assist the Court in evaluating these legal issues, especially given that law enforcement . . . [in]disputably exceeded the scope of the first search warrant."[4] (*Id.* at PageID 1962–63.)

Here, the Court first evaluates whether Affidavit 1 contains information to support a "substantial basis" finding that Russell knew Ombisi was engaged in illegal drug distribution. *Brown*, 732 F.3d 569, 572–73. Russell laments that the "Report . . . does not include much discussion of the affidavit's basis for probable cause as to Mr. Russell's iCloud account, instead citing co-defendant Ombisi's challenge to the same warrant and concluding that the warrant was

---

[3] Russell also generally states that his objection "relies upon the facts and legal authority set forth in greater detail I his previously filed Motion to Suppress Evidence and Reply Brief." (ECF No. 136 at PageID 1962.) However, this attempt to shoehorn authorities previously argued before the reviewing magistrate into his objection for reconsideration is not well taken. *See United States v. Bowers*, No. 0:06-cv-7, 2017 WL 6606860, at *1 (E.D. Ky. 2017) ("Where an objection is simply a repetition of what the Magistrate Judge has already considered, it fails to put the Court on notice of any potential errors in the Magistrate's R&R.") (citations omitted). To state a cognizable objection, Russell would have needed to *identify* specific portions of the Report to which he objects and *apply* the case law he previously cited in his Motion to refute them; stated differently, the law requires that he make an argument based on earlier-cited law rather than merely deposit the "facts and legal authority . . . previously filed" at the feet of the district judge and request that the undersigned fill in the blanks. Accordingly, without more, the Court will neither speculate about application for earlier-cited case law nor devise an argument on a litigant's behalf.

[4] Notwithstanding the Report's finding that the Government "appears to concede that the text messages were obtained outside the scope of the First Search Warrant, as it does not argue otherwise," (ECF No. 134 at PageID 1953), the Government disputes precisely this point in its objection. (ECF No. 138.) The Court will address this objection at in a subsequent section in this Order.

based on probable cause . . . ." (ECF No. 136 at PageID 1963.)  Citing *United States v. Garska*, 2009 WL 4723617, at *5 (E.D. Tenn. 2009), he maintains that his connections to Ombisi were at best "facially innocent" and that "mere association is insufficient to sweep a defendant within the drag-net of conspiracy." *United States v. Morrison*, 220 F. App'x 389, 396 (6th Cir. 2007). However, the connections described in the affidavit belie this characterization.

First, consider that Affidavit 1, as the Report notes, describes a chain of text and multimedia communications between Russell and an individual identified as "CC-1" in Russell's contacts about "procuring shipping supplies, generating amounts necessary to purchase postage, and the depositing of parcels into the USPS mail stream."[5] (ECF No. 90 at PageID 832–34; ECF No. 134 at PageID 1947.)  "CC-1", according to Affidavit 1 as described in the Report, received at least twenty pieces of mail featuring U.S. postage bought with an account known to have previously purchased postage to distribute illegal drugs—some of which were delivered to the affiant himself through controlled purchases.  (*See* ECF No. 134 at PageID 1947.)  The Report provides even greater clarity, excerpting the depicted messages themselves in full detail.  (*Id.*)  Russell has not explained how the Report's characterization of these conversations suggests they were facially innocent under the circumstances and, given the extensive facts discussed in the Report, more than a conclusory statement is required.  *See Yukins*, 7 F. App'x at 356 (nonspecific objections are "tantamount to a complete failure to object").

Second, Defendant quotes *United States v. Morrison*, 220 F. App'x 389, 396 (6th Cir. 2007) (citing *United States v. Coppin*, 1 F. App'x 283, 288–89 (6th Cir. 2001)) for the proposition

---

[5] A review of AT&T business records from "CC-1's" iCloud account revealed to the affiant that the text messages were sent between that account and a phone number registered to an Apple iCloud 11 Pro cellular telephone registered to Russell at address 5215 Royal Sunset Court, Katy, Texas 77493.

that "mere association is insufficient to 'sweep [a defendant] within the drag-net of conspiracy.'" *Id.* While this recitation of law is true, here the Report indicates Russell had closer ties to Ombisi's criminal activity than "mere association." Consider the text messages between Russell and Ombisi that suggest planning for parcel distribution from certain USPS locations. (ECF No. 134 at PageID 1947-48.) To this end, Defendant argues that the text messages indicate "facially innocent" conduct, specifically "advice on how to create a business account for USPS," and "there is absolutely no information in the affidavit suggesting [he] had any knowledge or reason to know what Ombisi was shipping, let alone that he was shipping illegal drugs." (ECF No. 136 at PageID 1964.)

This explanation, while possible, is unlikely when the conversation is evaluated in context for two reasons. Initially, Ombisi and Russell discussed shipping "100+ orders." (ECF No. 134 at PageID 1947.) Russell can provide no alternative reason why he would need to discuss "100+ orders" with Ombisi and the fact that he does certainly could provide probable cause that he knew Ombisi was engaged in some enterprise. Next, Ombisi directs Russell to "hit up post offices at night" to which Russell agrees with "Ok bet let me get to the house rn." (ECF No. 134 at PageID 1948.) Deliberately agreeing to mail parcels at night, while not itself illegal, at least suggests, as the affiant explains, an intent to avoid detection. (ECF No. 90 at PageID 835.) These reasons, taken *together* weigh more against a facially innocent explanation than for one and provide a remote, albeit minimally sufficient nexus connecting Russell to Ombisi's criminal conduct with some slight modicum of evidence.[6] *See McCoy*, 905 F.3d at 416. Therefore, Russell's objection is **OVERRULED**.

---

[6] Russell's conclusory statement that "the likelihood of an innocent explanation is higher than the likelihood of a guilty one," but does not provide a specific argument as to *why the Court*

8

### C. Search Warrant 20-SW-273 and the Government's Objection

The Government argues that the reviewing magistrate judge erred when she found that "[t]he Government appears to concede that the text messages were obtained outside the scope of the First Search Warrant, as it does not argue otherwise." (ECF No. 134 at PageID 1953; ECF No. 138.) Specifically, the Government avers that it did not concede "that the text messages were outside the scope of the first warrant, only that these messages were in a section related to probable cause for searching the iCloud of a third party." (ECF No. 138 at PageID 1974.)

Upon review, and to resolve any confusion, the Court considers the original briefing submitted by the Government to the reviewing magistrate judge on the issue. (ECF No. 119.) The Government's argument in that brief specifically stated: (1) "However, *even if* the April 2018 messages at issue were excluded, the affidavit in support of 20-SW-273 still contains sufficient probable cause to search both Ombisi and Russell's iClouds," and (2) "*[w]hether or not* the disputed April 6, 2018[] message between Russell and 'AS' is outside the scope of the first warrant, the 20-SW-273 iCloud warrant, as it related to Ombisi and Russell, is supported by probable cause that does not include this message." (ECF No. 119 at PageID 1829) (emphasis added).

Taken at its word, the Government did not concede that the text messages at issue were obtained outside the scope of the first search warrant. The two qualifiers "even if" and "whether or not" suggest that the Government was arguing in the alternative that other bases existed to search the iCloud accounts at issue *regardless* of whether the search exceeded the scope of 20-SW-273. (*Id.*) While it is unclear why the Government selected these exact qualifiers, it *is* clear

---

*should prefer his argument to the rationale in the Report and Affidavit.* (ECF No. 136 at PageID 1964.) This argument is therefore unavailing for the same reasons in note 3, *supra*.

9

that a plain reading of the language it used did not constitute a *concession*—explicit or otherwise. Therefore, the Government's objection is **SUSTAINED**.

## **CONCLUSION**

For the foregoing reasons, the Report is **ADOPTED IN PART** and **DENIED IN PART**, Russell's objection is **OVERRULED**, the Government's objection is **SUSTAINED**, and the Motion to Suppress, (ECF No. 89), is **DENIED**.

**IT IS SO ORDERED** this 26th day of August, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE